FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Nov 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

ROBERTO LLERENAS, JR.,

                Defendant.

No.    4:14-cr-06053-EFS

**ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C § 2255**

Before the Court, without oral argument, is Defendant Roberto Llerenas, Jr.'s Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.[1] Defendant asserts that he received ineffective assistance of counsel for three reasons: 1) his attorney failed to timely inform the Court that jail officials failed to provide Defendant with his necessary medication; 2) his attorney failed to file for downward departure under section 5K2.13 of the Sentencing Guidelines; and 3) his attorneys denied Defendant access to discovery materials.[2] Having reviewed the

---

[1] ECF No. 525.

[2] *See generally* ECF No. 525-1.

pleadings and the file in this matter, the Court is fully informed and denies the motion.

## I.    <u>Background and Procedural History</u>

On December 9, 2014, Defendant was indicted for two counts of sex trafficking of children by fraud, force, and coercion in violation of 18 U.S.C. § 1591(a)(1), (b)(1) and (2).[3] On September 9, 2015, Defendant was charged with two additional counts of sex trafficking of children by force, fraud, or coercion.[4] On January 13, 2015, Alison Guernsey of the Federal Defenders of Eastern Washington and Idaho appeared on behalf of Defendant.

On May 26, 2015, defense disclosed its intent to call Elizabeth Ziegler, Ph.D.[5] as an expert to testify at trial as to Defendant's intellectual capacity and the

---

[3] ECF No. 1.

[4] ECF No. 266.

[5] Dr. Ziegler is a licensed clinical psychologist and neuropsychologist with experience in diagnosing and treating traumatic brain injuries. She was retained by defense counsel to conduct a neuropsychological examination of Defendant and establish a diagnosis regarding Defendant's mental condition and whether those conditions would affect his presentation and comprehension of the charges against him and whether his conditions rendered him subject to manipulation to a degree that is greater than those individuals who do not suffer from his conditions. *See* ECF No. 323.

impact this has on his communication.[6] On June 4, 2015, defense disclosed Dr. Ziegler's report.[7] Based on her observations and assessment, Dr. Ziegler opined Defendant would be competent to testify and that he did not show any evidence of significant cognitive impairment, psychosis, or delusions that would affect his testimony. Dr. Ziegler recommended, that if Defendant were to testify, he be asked "focused and direct questions."[8] Based on review of Defendant's medical records as well as behavior observations and objective assessment, Dr. Ziegler opined there was no evidence of psychopathology, but that Defendant's intellectual, cognitive, and psychological development were impacted by Defendant's history of poor education and adverse childhood experiences.[9] The Court had concerns that there was very little, or no, scientific basis or medical knowledge upon which Dr. Ziegler's final conclusions regarding Defendant's reportedly limited ability to testify clearly and directed were based.[10]

---

[6] ECF No. 85.

[7] ECF No. 105.

[8] ECF No. 129 at 13.

[9] ECF No. 129.

[10] ECF No. 174.

1    After two hearings on whether Dr. Ziegler could testify at trial, the Court

2  held a *Daubert* hearing on June 30, 2015.[11] The Court ruled Dr. Ziegler could

3  testify to the opinions expressed in her report and during the *Daubert* hearing.[12]

4    Upon granting Defendant's request for a *Daubert* hearing, the Court

5  authorized the United States to conduct its own psychiatric evaluation of

6  Defendant. The United States' expert, Nathan Henry, Psy.D., conducted an

7  assessment of Defendant evaluating his communication abilities and potential

8  implications for his ability to testify in court.[13] Dr. Henry opined Defendant's

9  "highly verbal style is not driven by an underlying mental disease" and that

10  Defendant's "style of communication is not the result of and does not constitute a

11  mental disorder or defect."[14] Dr. Henry further opined that Defendant's lower than

12  average intelligence combined with his sustained auditory

13  attention/comprehension difficulty may require accommodations when Defendant

14  is testifying in court (e.g., repeating questions, directing Defendant back to the

15  original question when responses are off track, and/or limiting the length or

---

[11] ECF No. 174.

[12] ECF No. 291.

[13] In conducting his assessment of the Defendant, Dr. Henry conducted a clinical

interview of Defendant and reviewed multiple past medical records, including Dr.

Ziegler's neuropsychological examination report.

[14] ECF No. 448-1 at 14.

complexity of questions) but would be no different from the type of accommodations afforded to all witnesses when being questioned in criminal court proceedings.[15]

On September 23, 2015, Defendant retained William McCool as counsel, replacing Ms. Guernsey.[16]

Trial began on June 20, 2016. On the morning of trial, defense counsel raised the issue that Defendant was not receiving his thyroid medication, which self-reportedly affected Defendant's ability to concentrate.[17] After contacting the prescribing physician, the Court permitted Defendant to take one pill and directed counsel to discuss the issue further with the Benton County jail and Defendant's physician.[18]

On June 30, 2016, Defendant was found guilty of two counts of Sex Trafficking of Children by Fraud, Force, or Coercion and two counts of Financially Benefiting from Sex Trafficking by Force, Fraud, or Coercion.[19]

At the motion and sentencing hearings on August 31, 2016 hearing, Mr. McCool advised the Court that Defendant gave him a note on the last two days of trial, June 29 and June 30, indicating Benton County Jail did not give him his

---

[15] *Id.* 14-15.

[16] ECF No. 310.

[17] ECF No. 498 & ER 1220-1231.

[18] ECF No. 502 & ER 2133-36.

[19] ECF No. 457.

medication on those two days. Mr. McCool noted that he had no difficulty communicating with Defendant while he was on the stand.[20] The Court found:

> I'm satisfied that here there is no question on this record before the Court, given the history of the proceedings and [Defendant's] participation and presence, that in any way implicates a -- any substantial evidence that due to a mental disease or defect [Defendant's] unable to understand the nature and consequences of the proceedings against him or to assist in his defense. And the Court, having reviewed Dr. Ziegler's record, Dr. Henry's record, the jail records, the Kadlec records, and observed [Defendant] over the course of months this case has been pending, there is absolutely no basis to be concerned about [Defendant's] competency to proceed.[21]

On September 2, 2016, the Court sentenced Defendant to 30 years in prison.[22]

Defendant filed a notice of appeal.[23] The Ninth Circuit affirmed the decisions of the Court. Cert was.

On November 12, 2019, Defendant filed a motion under 28 U.S.C. § 2255. The Court directed the U.S. Attorney's Office to answer Defendant's 2255 petition; an answer was filed.[24]

---

[20] ECF No. 540-1 at 513.

[21] ECF 491 & ER 2321.

[22] ECF No. 457.

[23] ECF No. 465.

[24] ECF Nos. 526 & 540.

## II.    <u>Standard</u>

Section 2255 provides the following:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to . . . correct the sentence.

> . . . [T]he court shall . . . determine the issues and make findings of fact and conclusions of law with respect to [the motion].  If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall . . . correct the sentence as may appear appropriate.[25]

Upon receiving a 2255 motion and the United States' response, the court shall "determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates."[26] A hearing is required if the defendant's allegations require the court to look at facts outside the files and records.[27]

## III.    <u>Analysis</u>

Defendant has not shown that his right to effective assistance of counsel was violated because he failed to show that Ms. Guernsey's and Mr. McCool's

---

[25] 28 U.S.C. § 2255.

[26] Rule 8(a) of the Rules Governing Section 2255 Proceedings.

[27] *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

performance fell below an objective standard of reasonableness.[28] The right to

effective assistance of counsel in criminal proceedings is bestowed by the Sixth

Amendment. When challenging a conviction based on ineffective assistance of

counsel, a defendant must show "both that counsel's representation fell below an

objective standard of reasonableness, and that there exists a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would

have been different."[29] Before such a showing can be made, the defendant must be

able to identify specific acts that allegedly resulted from a lack of reasonable

professional judgment.[30] A court must be "highly deferential" when scrutinizing

counsel's performance, considering it in the context of counsel's perspective at the

time, rather than through "the distorting effects of hindsight."[31] There is a "strong

[28] The burden is on Defendant to show that his counsel was ineffective by a
preponderance of evidence. *United States v. Lord*, 711 F.2d 887, 891 n.3 (9th Cir.
1983); *Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978) (citations
omitted).

[29] *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland v.
Washington*, 466 U.S. 668 (1984)).

[30] *See Strickland*, 466 U.S. at 690.

[31] *Id.* at 689.

presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[32]

## A. Competency Hearing.

Defendant argues counsel was ineffective when Mr. McCool failed to inform the Court that he was not receiving his medication the last two days of trial, failed to move for a competency hearing, and did not raise the issue until a later date.[33]

A defendant is deemed competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . has a rational as well as factual understanding of the proceedings against him."[34] Counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when "'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'"[35]

---

[32] *Id.* at 688.

[33] ECF No. 525-1 at 7-13.

[34] *Clark v. Arnold*, 769 F.3d 711, 729 (9th Cir. 2014) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

[35] *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 2665 F.3d 257, 283 (3d Cir. 2001)).

The record shows that defense counsel were intimately familiar with Defendant's mental difficulties and that they paid careful attention to Defendant's ability to participate in his defense. Dr. Ziegler told counsel that with some assistance in the style of questions asked, Defendant would be able to testify. And when problems with Defendant's medication arose the morning of trial, counsel interrupted the proceedings to resolve them.

Defendant's competency and mental health was substantially discussed and evaluated throughout the case by counsel and the Court. Dr. Ziegler and Dr. Henry never expressed an opinion that Defendant was not competent. When questions of whether Defendant received his medication arose, Mr. McCool and the Court noted there was no discernable effect on Defendant receiving his medication.[36] The Court observed that "not a scintilla of evidence in [Defendant's] behavior or in his

---

[36] Records provided to the Court showed that on the days in question, Defendant received his blood pressure, gastric reflux, and ibuprofen medication each evening. ER 2801-08. Defendant also argues he did not receive Olanzapine (an anti-psychotic medication), which had been prescribed by Anita Blair, Psy.D. However, Defendant's medical records include no reference to Olanzapine. Furthermore, there is no evidence Dr. Blair prescribed Defendant medication, but rather, that she conducted Defendant's Division of Vocational Rehabilitation in January 2006. Dr. Ziegler and Dr. Henry both reviewed Dr. Blair's evaluation. ECF 448-1 at 8 & ER 751.

testimony or in his observed participation with the interpreters, the marshals, and his attorney during trial" implicated any problem with Defendant at any time.[37] On this record, there is no indication there was a defect during trial or that the absence of medication impacted Defendant's competency.

**B. Downward Departure for Diminished Capacity.**

Defendant also argues defense counsel Mr. McCool was ineffective when he failed to seek a downward departure for diminished capacity under § 5K2.13 of the Sentencing Guidelines.[38] Defendant asserts he "met the requirements for the application of a downward departure based on the diminished capacity provision and none of the ineligibility factors applied to him."[39]

---

[37] ECF No. 491 & ER 2324.

[38] The United States argues this sentencing guideline issue was improperly raised via Defendant's § 2255 motion. ECF No. 540. Because the scope of collateral attack of a sentence under § 2255 is limited, it does not encompass all claimed errors in conviction and sentencing. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). However, Defendant alleges that errors in sentencing resulted from ineffectiveness of counsel. Ineffectiveness of counsel claims are customarily raised under 28 U.S.C. § 2255, rather than direct appeal. *United States v. Hoslett*, 998 F.2d 648, 660 (9th Cir. 1993).

[39] ECF No. 525-1 at 19. Section 5K2.13 authorizes a downward departure if "the defendant committed the offense while suffering from a significantly reduced

1    "[T]here exists a right to counsel during sentencing in both noncapital and

2    capital cases."[40] Here, Defendant has not demonstrated that Mr. McCool's

3    performance fell below an objective standard of reasonableness. The Court notes

4    that, contrary to Defendant's assertions, Mr. McCool argued for a sentence below

5    the guideline range based on "Defendant's mental condition" and provided evidence

6    in support of mitigation as part of the sentencing materials.[41] Defense counsel

7    highlighted that the PSIR indicated Plaintiff had been sexually abuse as a child

8    and suffers from ADHD, anxiety, and sleep apnea.[42] The Court reviewed and was

9    familiar with Defendant's health issues and medical records. The Court took

10    Defendant's mental health into consideration when it sentenced Defendant below

11    the guideline range.[43] The record shows counsel presented evidence related to

12    Defendant's diminished capacity at sentencing, which was considered by the Court.

13    Mr. McCool's approach to mitigation at sentencing was reasonable.

14

15    _____

    mental capacity" and "the significantly reduced mental capacity contributed

16    substantially to the commission of the offense." U.S.S.G. § 5K2.13. However, a

17    court may not depart below the guideline range in certain circumstances, including

18    when cases involve violence or serios threat of violence. *Id.*

19    [40] *Lafler v. Cooper*, 566 U.S. 356, 165 (2012) (internal citations omitted).

20    [41] ECF No. 438 at 4.

21    [42] *Id.*

22    [43] ECF No. 491.

23

**C. Defendant's Review of Discovery Material.**

Lastly, Defendant argues defense counsel Ms. Guernsey and Mr. McCool denied him the opportunity to review any discovery material.[44] To support this assertion, Defendant references letters from the United States and Federal Defenders explaining that "no copies [of the discovery] shall be made or disseminated to any person, including the defendant, . . . without the expressed written approval of the United States Attorney's Office."[45] Upon motion from the United States, the Court directed Ms. Guernsey and Mr. McCool to provide affidavits addressing whether discovery was reviewed with Defendant, and if so, what discovery and how discovery was made available to Defendant.[46]

On February 21, 2020, Ms. Guernsey filed an affidavit outlining her review of discovery with Defendant.[47] Ms. Guernsey contends she, along with several other employees of the Federal Defenders Office, reviewed the entirety of the United States' discovery with Defendant and provided him with as much access as he desired, during her representation of Defendant. Ms. Guernsey further explained her general practice in reviewing discovery with each client.[48] According to Ms.

---

[44] ECF No. 525-1 at 22.

[45] ECF No. 525-1 at 33.

[46] *See* ECF No. 532.

[47] ECF No. 536.

[48] ECF No. 536 at 3-4.

Guernsey's records, Defendant spent approximately 18 hours reviewing the discovery at his own pace, in addition to the many times Ms. Guernsey and support staff met with Defendant to discuss the discovery.[49] After Defendant was arrested for violating the terms of his pretrial release, Ms. Guernsey contends she and her staff continued to visit Defendant on multiple occasions to review discovery.[50]

On February 21, 2020, Mr. McCool also filed an affidavit outlining his review of the discovery with Defendant.[51] Mr. McCool contends, that to the best of his recollection, he reviewed all the information provided by the United States with Defendant. According to Mr. McCool, he spent a minimum of 75-100 hours reviewing reports from the United States and DSHS records with Defendant.[52]

Defense counsels' review of discovery with Defendant was reasonable. A defendant's access to discovery must be balanced with security needs and resource constraints.[53] Here, Defendant had numerous opportunities to review the discovery

---

[49] ECF No. 536 at 6 ("According to contemporaneous notes, while Mr. Llerenas was out of custody, my support staff and I met with Mr. Llerenas to talk about discovery approximately 20 times.").

[50] *Id.*

[51] ECF No. 535.

[52] *Id.*

[53] *See United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995) (A criminal defendant's right to access discovery "must be balanced against the legitimate

in his case and discuss any questions he had with counsel. He was permitted to review, at his leisure, discovery at the Federal Defenders' office until he was arrested for violating his pretrial release conditions. After Defendant was arrested, defense counsel and support staff visited Defendant to review discovery. Furthermore, Defendant was encouraged to ask questions when he reviewed discovery on his own and with counsel. On this record, there was no deficient performance by defense counsel when Defendant spent hours reviewing and discussing the discovery with counsel.[54]

There is no information suggesting that further investigation would have any impact on defense counsels' representation of Defendant.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Robert Llerenas, Jr.'s Motion by a Person in Federal Custody to Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, based on ineffective assistance of counsel, **ECF No. 525**, is **DENIED**.

---

security needs or resources constraints of the prison."); *see also United States v. Youker*, 719 Fed.Appx. 492 (9th Cir. 2017) (finding district court did not abuse discretion by denying defendant's request for "complete access" to discovery in his cell).

[54] *Sarno*, 73 F.3d at 1492 (finding no abuse of discretion when defendant had twenty hours to review 250,000 pages of discovery).

2.      The Clerk's Office is directed to **CLOSE** this file and the related civil

file, 4:19-CV-05258-EFS.

3.      The Court **DECLINES** to issue a certificate of appealability because

Defendant has not made a substantial showing of a denial of

constitutional right. 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

provide copies to counsel and Robert Llerenas, Jr.

**DATED** this ___6th___ day of November 2020.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge